UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN JOSEPH LORENZINI (F94673), | Case No. 23-cv-05904-PCP |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION** |
| RAGASA, et al., | Re: Dkt. No. 27 |
| Defendants. | |

Benjamin Lorenzini, a California prisoner proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. Mr. Lorenzini alleges that defendant Ragasa subjected Mr. Lorenzini to excessive force. *See generally* Dkt. No. 1 ("Complaint").

At defendant Ragasa's request, this action was referred to early settlement negotiations before United States Magistrate Judge Illman. Dkt. No. 20. After the parties failed to settle, defendant Ragasa moved for summary judgment. Dkt. No. 27 ("MSJ"). The Court agrees with defendant Ragasa that, if force was used, it was used in an effort to restore discipline and further agrees that Mr. Lorenzini did not introduce evidence showing that any force applied to him was excessive. Because these arguments are dispositive of the matter, the Court need not consider defendant Ragasa's other arguments.

For the reasons stated below, defendant Ragasa's motion for summary judgment is **GRANTED**.

## BACKGROUND

The following facts are undisputed unless otherwise noted.

Mr. Lorenzini is diabetic and receives insulin injections. *See* Dkt. No. 36 ("Opposition"),

Ex. A ("Plaintiff's Deposition") at 37:22–25. On October 10, 2023, Mr. Lorenzini's insulin injection was to be administered by non-defendant Nurse Alcantar. Dkt. No. 27-4 ("Ragasa Declaration") ¶ 4. Nurse Alcantar was escorted by defendant Ragasa. *Id*. Mr. Lorenzini explains that Nurse Alcantar "[is] by the book," and so would "give [Mr. Lorenzini] the shot in the arm" rather than allowing him to inject his own insulin. Pl.'s Depo. at 2:3–9. The California Correctional Health Care Services Manual requires prisoners to be "escorted to clinical space in the housing unit (if available) or to the clinic where the licensed health care staff can safely administer the medication." Dkt. No. 27-2, Ex. B ("CCHCS Manual") Art. 5, Ch. 3, Sec. 3.5.29(c)(6)(D)(2).

When non-defendant Nurse Alcantar and defendant Ragasa arrived at Mr. Lorenzini's cell, defendant Ragasa opened the food port in Mr. Lorenzini's cell door so that he could apply restraints in preparation for being escorted to a space where Nurse Alcantar could administer the injection. *See id*. at 42:10–16. Mr. Lorenzini refused to exit his cell and, by his own testimony, instead insisted that the insulin be injected "in front of [his] door." *See id*. at 43:1–9, 13–15. Defendant Ragasa represents that Mr. Lorenzini insisted on receiving his insulin injection "while still in the cell." Ragasa Decl. 5. Under either version of the facts, Mr. Lorenzini's wish to receive his injection at or in his cell was at odds with department requirements. *See* CCHCS Manual Art. 5, Ch. 3, Sec. 3.5.29(c)(6)(D)(2).

When Mr. Lorenzini refused to exit his cell, defendant Ragasa informed Nurse Alcantar that Mr. Lorenzini was refusing his insulin injection. *See* Pl.'s Depo. at 44:5–6. Mr. Lorenzini protested that he, in fact, wanted his injection, and "put [his] hands out" through the food port. *See id*. at 44:7–45:7. Defendant Ragasa was about to apply regular handcuffs to Mr. Lorenzini's hands, but Mr. Lorenzini again refused to exit his cell unless defendant Ragasa used waist chains instead. *See id*. at 45:9–19. Defendant Ragasa told Mr. Lorenzini to "move [his] hands," and Mr. Lorenzini refused and told defendant Ragasa to call the sergeant. *See id*. at 45:22–14. Mr. Lorenzi "left [his] hands right there" in the food port, then subsequently reached farther out of the food port, until his upper arm extended through the food port. *Id*. at 45:19, 46:1, 46:8–9, 49:9–16. Defendant Ragasa stated that Mr. Lorenzini was "'holding [the food port] hostage.'" *Id*. at 46:3–4.

Defendant Ragasa closed the food port. *See* Ragasa Decl. ¶ 5; Pl.'s Depo at 51:15–16. Defendant Ragasa represents that he had committed to opening the cell door if Mr. Lorenzini retracted his arms, that Mr. Lorenzini had retracted his arms before the food port was closed, and that the food port did not close on Mr. Lorenzini's arms. *See* Ragasa Decl. ¶ 5. Mr. Lorenzini represents that he had not retracted his arms, and that defendant Ragasa slammed the food port closed on Mr. Lorenzini's arms. *See* Opp. at 1; Pl.'s Depo at 51. Some time later, another guard escorted Nurse Alcantar to give Mr. Lorenzini his injection. *See id*. at 57:17–19.

The following day, Mr. Lorenzini reported pain in his arm and was seen by medical staff. *See* MSJ at 7. Medical records indicate that Mr. Lorenzini's upper left arm was red, and that Mr. Lorenzini reported "pain ... radiat[ing] down [his] arm to [his] fingers." Pl.'s Depo., Ex. G. Mr. Lorenzini represents that he suffered a blood clot and nerve damage but does not present any medical documents recording such injuries or treatments for such injuries. *See* Pl.'s Depo at 91:15–17 (stating that Mr. Lorenzini suffered a blood clot and nerve damage); *see generally* Opp. & Exs. (failing to include medical records); *see also* Dkt. No. 37 ("Reply") at 2 (pointing to the lack of medical evidence).

### LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a typical summary judgment motion, a defendant moves for judgment against a plaintiff on the merits of his claim. In such a situation, the moving party bears the initial burden of

United States District Court
Northern District of California

3

identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *See id.* at 631.

## ANALYSIS

The treatment a convicted prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). "After incarceration, only the unnecessary and wanton infliction of pain ...constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (ellipsis in original) (internal quotation and citation omitted). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, and (2) the prison official possesses a sufficiently culpable state of mind, i.e., the offending conduct was wanton. *Farmer v. Brennan*, 511 U.S. 824, 834 (1994)

What is required to establish an unnecessary and wanton infliction of pain varies according to the nature of the alleged constitutional violation. *Whitley*, 475 U.S. at 320. For an excessive force claim, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *See Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992); *Whitley*, 475 U.S. at 320–21; *Jeffers v. Gomez*, 267 F.3d 895, 912–13 (9th Cir. 2001) (applying "malicious and sadistic" standard to claim that prison guards used excessive force when attempting to quell a prison riot). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship

United States District Court
Northern District of California

4

between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7; *see, e.g.*, *Simmons v. Arnett*, 47 F.4th 927, 933 (9th Cir. 2022) (concluding that guard's decision to shoot the closer of two inmates who were fighting with sponge rounds, the lowest level of force available to him, to stop the fight and keep staff and prisoners safe was not an excessive use of force); *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (holding that pepper-spraying fighting inmates a second time after hearing coughing and gagging from prior spray was not malicious and sadistic for purpose of causing harm, where initial shot of spray had been blocked by inmates' bodies).

Here, the parties dispute whether force was applied at all. *See supra* I. Assuming force was used, however, it is undisputed that it was necessary to restore discipline.

It is undisputed that, by reaching out of the food port, Mr. Lorenzini created a security risk. According to Mr. Lorenzini's own testimony, he had reached his arms out of his food port up to his bicep. *See* Pl.'s Depo. at 45:19, 46:1, 46:8–9, 49:9–16. Defendant Ragasa explains that "[w]hen it is open, the food port poses an extreme safety and security risk" because "[a]n incarcerated person can use the food port opening to attack or injure staff members" such as "for example, by grabbing, biting, breaking, or stabbing staff members' arms, wrists, or hands ...." Ragasa Decl. ¶ 3. Other courts have recognized that "when an inmate refuses to remove his hand from the food port, it causes serious security concerns and interferes with the regular activities at the prison." *Harnden v. Key*, No. 1:02CV06529LJOGSAPC, 2009 WL 57637, at *7 (E.D. Cal. Jan. 9, 2009) (summarizing and agreeing with defendants' arguments while denying motion for a new trial); *see also Hayes v. Forsyth*, 104 F.3d 365 (9th Cir. 1996) (accepting defendant's argument "that due to security considerations, an inmate's food slot must be closed and locked at all times, other than when an inmate's meal is served").

Assuming force was used, it also is undisputed that defendant Ragasa first attempted to temper the need for a forceful response. According to Mr. Lorenzini's own testimony, defendant Ragasa instructed Mr. Lorenzini to remove his arms from the food port at least twice and announced that Mr. Lorenzini was holding the food port hostage. *See* Pl.'s Depo. at 45:22–23,

47:2–4. According to Mr. Lorenzini's version of the facts, Mr. Lorenzini expressly refused to withdraw his arms, and in fact reached farther out of the food port. *See id*. at 45:19, 46:1, 46:8–9, 49:9–16. Mr. Lorenzini's refusal to comply with instructions made the use of force necessary. In such circumstances, courts have found it reasonable for an officer to apply force to restore discipline. *See, e.g.*, *Welsh v. Correct Care Recovery Sols.*, 845 F. App'x 311, 317–18 (5th Cir. 2021) (affirming dismissal of an excessive force claim where officer "kicked the food slot … closed, causing bruising," after the prisoner refused to remove his hands after repeated instructions to do so); *Erby v. Ray*, 47 F. App'x 744, 745 (6th Cir. 2002) (approving district court's grant of summary judgment where defendants applied force to a prisoner holding his food slot hostage because force was used "in a good faith effort to secure Erby's cell, not for the very purpose of causing him any pain").

Finally, assuming force was used, there is no evidence that the amount of force used was "malicious and sadistic." *See Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010) (explaining that "the 'absence of serious injury'" is relevant to an excessive force inquiry because it may "provide some indication of the amount of force applied … "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim."). Although Mr. Lorenzini argues that he suffered a blood clot and nerve damage after the event, he did not present evidence of either injury. *See generally* Opp. & Exs. In the absence of any medical evidence of these injuries, Mr. Lorenzini has failed to make a showing that his injury was so severe as to necessarily imply defendant Ragasa used an excessive amount of force. *See Celotex Corp.*, 477 U.S. at 322–23 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (finding the plaintiff's claim of injury due to allegedly excessive force was "unsupported" where the plaintiff "d[id] not provide any medical records to support her claim that she suffered injury as a result of being handcuffed").

The only medical evidence in the record shows that Mr. Lorenzini experienced some pain and redness on one arm. *See* MSJ at 7 (noting this is the extent of Mr. Lorenzini's injuries); *see also* Pl.'s Depo., Ex. G (showing only a report of redness and some pain, one day after event). The

United States District Court
Northern District of California

medical evidence does not suggest that Mr. Lorenzini experienced so much as a bruise. *See id*. This is not so severe as to necessarily imply that defendant Ragasa applied a wanton amount of force. *See, e.g.*, *Floyd v. Santa Clara Dep't of Correction,* No. 22-CV-00750-CRB, 2024 WL 4801852, at *4 (N.D. Cal. Oct. 10, 2024), *aff'd,* No. 24-6866, 2025 WL 3012645 (9th Cir. Oct. 28, 2025) (where inmate suffered only bruising from handcuffs, this "lack of severe or lasting injuries supports a conclusion that the amount of force used was not excessive"); *Saddozai v. Arqueza,* No. 18-CV-03972 BLF (PR), 2023 WL 4206069, at *8 (N.D. Cal. June 26, 2023) (concluding, where a "nurse noted no injuries" following a use-of-force incident, that "the degree of force used was de minimis and thus not actionable"); *Lewis v. Stankus*, No. 3:10-CV-00497-ECR, 2012 WL 3293730, at *1 (D. Nev. Aug. 10, 2012) (finding that swelling and a soft tissue injury were too de minimis to demonstrate an excessive use of force).

Because Mr. Lorenzini has introduced no evidence that defendant Ragasa's use of force was excessive under the circumstances, the Court **GRANTS** defendant Ragasa's summary judgment motion.

**IT IS SO ORDERED**.

Dated: March 18, 2026

_____

P. CASEY PITTS
United States District Judge

United States District Court
Northern District of California

7